[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON APPEAL FROM PROBATE COURT DECREE OF MARCH 5, 1998
The petitioner, the mother of Cameron S., brings this appeal from a transfer of guardianship of Cameron done in the Probate Court for the District of Norwich, Salafia, J. on March 5, 1998. The matter was transferred from the Superior Court for Juvenile Matters at Montville to this Court for appropriate reasons.
Finding of Facts: Teresa E (hereinafter "mother") and Stephen S. (hereinafter "father") were married in March, 1992. On February 7, 1993, Cameron Dustin S. was born to the parties. Prior to this birth the couple lived in New Port Richie, Florida for a period of time but then removed to Connecticut. They resided together at 132 School Street, Norwich, Connecticut until 1993.
In September, 1993, mother left Connecticut without Cameron, ostensibly to regain custody of two other children of hers. She never returned to Connecticut. She resided with her mother in New Port Richie for thirty days less several inconsequential days, CT Page 16071 then moving to Moffett Drive in that same city, remaining there until January, 1995. She then moved to Cornell Court, New Port Richie, FL. In 1996 she received notification sent to the Moffett Drive address that she had been divorced in Connecticut. Prior to this time mother had received cards and telephone calls from father. In that same year mother married her current husband. From that time forward, mother was unable to contact father, although she attempted to Her letters, containing her current address were not returned to mother. Melynda G, Cameron's half-sister and father's daughter, who knew mother from the time mother and father were living together in Norwich, testified that she found these letters among his belongings after father's death.
After mother went to Florida, she had still been in telephone and written contact with father. One such contact occurred near the end of 1993 when father, concerned that mother was not going to return home to Connecticut, asked his daughter, Melynda, to speak with mother who was on the telephone as Melynda was visiting her father. She did this and was told something to the effect that "these things take a little longer than planned." Melynda testified that she did not know at that time that mother was in Florida as she was speaking to her. Clearly, Melynda's father knew that mother was in Florida. Melynda knew that mother had gone to Florida to attempt to regain custody of her other two children, that her family lived in Florida and that mother and Melynda's father had lived in Florida prior to coming to Connecticut.
Although Melynda never had contact with mother after the 1993 telephone call, she was in frequent contact with father who knew where mother was, often picking up or delivering Cameron. She never saw mother in Connecticut at any time until after her father's death, and in fact, mother never returned to Connecticut until that time. Father became seriously ill sometime in 1996, and in 1997 it was evident that he could no longer take care of Cameron. On October 20, 1997, Melynda petitioned the Probate Court for the District of Norwich for removal of mother as guardian of Cameron, the granting of temporary custody to one Pamela G, and co-guardianship of Cameron to father and Pamela G. Father consented to this petition and signed the same. Hand written on the petition under parent/guardianship to be removed/terminated, "Teresa Lynn S. . . . last known address 132 School St. Norwich, CT 06360". This document was signed by Melynda G who knew that mother had not lived at that address CT Page 16072 since 1993, who knew that mother had gone to Florida, who knew that mother had family in New Port Richie, Florida, and who knew that mother's last known address was in Florida. Melynda testified that she indicated to the judge at the time that she thought mother was in Florida.
Notice of the probate hearing was published in the Norwich (Connecticut) Bulletin and on March 5, 1998 mother was removed as guardian of Cameron by decree of the Probate Court. On March 8, 1998, father died and several days after that, Melynda notified mother by mail addressed to Florida that father had died. Upon learning of this, mother came to Connecticut and after some investigative research, learned of the petition and that she had been removed as guardian of Cameron. Mother never had notice of the petition nor the decree prior to that time.
Decision: The Court finds that Teresa Lynn (S....) E (mother) is aggrieved by the decree of the Probate Court of March 5, 1998 within the meaning of CGS Sec. 45a-186 and that this appeal is properly before the Superior Court. Teresa E, as mother of Cameron, had a constitutionally protected right arising our of that status, which was materially altered by the decree of the Probate Court. At issue, then, is whether she was given adequate notice of the petition to the Probate Court and the hearing date prior to any action being taken by that Court.
Both CGS Sections 45a-607 and 45a-609 require that if the whereabouts of the parent is unknown, then notice be given to a parent by publication in a newspaper which has a circulation in the parent's last known place of residence. This Court finds that the last known place of residence of Teresa E was not Norwich, Connecticut, but New Port Richie, Florida. Everyone involved knew that mother had not lived in Norwich for four years, and the petitioner knew she was in Florida.
While notice by publication might be looked upon as a "last ditch" effort to notify a party difficult to find, in no way can it be treated lightly because of that fact. Clearly the legislature intended that parties receive notice and set up a mechanism to see that such happens, in a most effective (in hand service) to effective (registered mail, return receipt requested or certified mail or abode service) to least effective (publication) manner. Where the petitioner knew that mother was in Florida, service by publication in Connecticut was inappropriate. Father consented in writing to the petition. At CT Page 16073 that time he not only knew that mother was in Florida, but also had an actual last known address for mother in her own handwriting. This Court finds that the Probate Court decree of March 5, 1998 was entered without compliance with CGS Sections45a-607 and 45a-609. Mother had no notice and therefore no opportunity to appear and contest the petition.
"The common law method of reversing the decree and sending the case back to the Probate Court with directions as to the action to be taken is one procedure that the Superior Court may follow." R. H. Folsom, Connecticut Estates Practice: ProbateLitigation (1992) Sec 7.10, p. 282. "Whether the Superior Court should take the necessary probate action or remand the matter to the Probate Court with instructions depends in part upon whether discretion ordinarily vested in the Probate Court must be exercised. Id., 283.
In State v. Gordon, 45 Conn. App. 490, cert granted243 Conn. 911, appeal dismissed 10-27-98, the court agreed that, because there was a jurisdictional defect due to faulty notice, the "trial court properly remanded the case to the Probate Court to give notice to the [party], to hold a hearing and render a new order and decree."
The appeal is granted and the matter remanded to the Probate Court for proper notice to all parties and to conduct a full hearing on the merits of the petition.
Mack, J.